United States v. Brooks 21-1685 Mr. Rayfield. May it please the court. Mike Rayfield for the appellant Love Brooks. The very narrow issue before the court is whether it was possible that the jury based the 924c conviction only on the invalid arson charge and the court has predicates submitted to the jury are inextricably intertwined. And there's no question that if you look at the convictions at a high level of generality, the arson related charges and the murder charges are related. They were both designed to make the Mora organization more successful. But the test isn't whether they're related. It's whether they can be extricated from one another. And in my view, they're frankly pretty easy to extricate for two reasons. One is that they had different purposes. The arson was designed to eliminate a source of drugs and guns for the Pitkin gang. The Linwood attack was designed to take territory away from the Dominican gang or what was being referred to as the Dominican gang at trial. These were both forms of a turf battle involving one gang against different other opponents, opposing gangs. Is that correct? That's correct. But the record is very clear that they had different purposes and the indictment itself makes clear that the Mora organization used violence for many different purposes, including to retaliate against rival gangs and to win disputes over drug territory. And that's a good way of describing the basic distinctions between the arson and the murder. And the second main distinction between the two sets of crimes is that they had different primary perpetrators. Brooks was the one who afterwards. But during the murder, Brooks was simply sitting in the back of the car while William Mora fired the shots. And it's at least possible under this Court's cases that the jury based the 924 conviction on the only crime that Brooks himself directly performed. And for these reasons, this case is nothing like those that have found 924C predicates inextricable, like the combined kidnapping, robbery in the Minaya case or the assault and attempted robbery of the cab driver in the Tyrell case. When two crimes are committed in furtherance of one another or when they're committed against the same people at the same time, it's logically impossible for the jury to base a 924C conviction on one but not the other. But here, for these purposes, the best analogy, I think, is this Court's decision in United States v. Capers, 40 F. 4th 105, which we cited but the government doesn't address in its brief. There, the Court found that a gang-rico conspiracy involving murder was not inextricably intertwined with a narcotics conspiracy. And the Court focused on the fact that the criminal organizations had many distinct goals. It held that because the murder was not, quote, in furtherance of the narcotics conspiracy rather than in the broader interest of the enterprise, the 924C conviction had to be vacant. Mr. Rayfield, I take it you are addressing the question of whether there was an error, right? And in that regard, the question is, I think you're right, is it possible that the jury could have based its 924C verdict on, in effect, the wrong predicate? Suppose I agree with you about that. The next question that arises is harmless error. Would I be wrong to think that while the test for error is whether it is possible that the jury, we're looking at what the jury did and whether it's possible the jury did the wrong thing, as it were, but for harmless error purposes, we're asking, what would the jury have done if it had been properly instructed? So I respectfully disagree with that, Your Honor. The test I'm talking about, whether it's possible, is the harmless error test. I don't think there's any dispute that, I don't think the government would disagree that there was an error. That's the Yates test. That's whether there is an error. But the next question is whether the And I have a great deal of difficulty understanding, I mean, I think you're, I would frankly think you're right, that the jury, these are not inextricably intertwined, and the jury could have separated them, and therefore the jury could have said, he did the grenade thing, that's really bad, that's a 924C violation, we're done here, we don't have to look at anything else. But if you ask the question, what would they have done if they, if those counts were correctly excluded from their consideration, they did find your client guilty of aiding and abetting a murder that was indisputably and undisputedly done with a firearm. So help me out. Where is the prejudice from the error? So I just want to push back again on the premise of the question. The Yates test is what happens when there is an error. It assumes that an error has occurred. The error here being that the jury was instructed that it could find a 924C conviction based on predicates that have now been deemed invalid under Davis. So there's no dispute that there was an error. Yates, the question under Yates is whether the error was harmless because it was impossible for the jury to find, to base its 924C conviction solely on the arson. Well, what do you do with Stone against United States then? Stone against United States? Yeah, in that case, that's just last year, we upheld a 924C conviction that was predicated either on conspiracy to commit murder, which is not a violent crime as we know, or substantive murder. And the court said there was ample evidence that a instructed jury would have found the defendant guilty under 924C beyond a reasonable doubt because the jury convicted him of the substantive murder and the uncontroverted evidence at trial was that he killed the victim with a gun he had borrowed for that purpose. Now I recognize the factual distinction that Mr. Mora did not use the gun that he had with him when he was sitting in the back seat of the car. Nevertheless, you are not challenging the validity of the conviction for aiding and abetting Mora's murder, which was a murder that was committed by Mora with a gun while Brooks also had a gun. So I'm having trouble understanding, at least at first glance, the level of the abstract test, that's the test the court applied in Stone, right? It's what would the jury have done if properly instructed? Right, so what makes Stone distinguishable is exactly what you said. One is that the two cases were inextricably intertwined. You had a conspiracy to murder and a murder. We're not disputing here that the conspiracy, that count 33 is not inextricably intertwined with count 34. And as you put it, the gun, the defendant used the gun himself personally in connection with both of the predicates. But let me, I think I want to get to your sort of broader question, which is, how could the jury have found Mr. Brooks guilty of aiding and abetting the murder without finding that he was guilty of using a firearm in connection with the murder? He said he was aiding and abetting the use of a firearm in connection with the murder because that's what the murder was, was a murder with a firearm. And if you think about cases like Roseman, there's no question that he knew that Mora was armed. He knew that Mora was going there in this expedition with an intent to use the gun. So we don't have the situation where someone's taken by surprise that the person he's aiding and abetting is suddenly using a firearm. Yeah. And if it's okay, I'll answer that question, even though I know I'm out of time. So the wrinkle here is, I think that we can't know for sure that the jury found him guilty of against. So what I would propose to do would be, as opposed to what the Court Madam Brie did,   even if he didn't assist in the murder at all. So when you use that language, I'm very focused on the standard of review. And you cited, Judge Lynch cited Stone, you cited Capers, where we said it's plain error review, which requires a petitioner to show that any error was not harmless beyond a reasonable doubt. Do you disagree with that? I don't think we actually have a disagreement about the standard of review. I think the standard is whether there's any possibility that the jury could have, if instructed correctly, could have found him guilty of the substantive murder without finding him guilty of the aiding and abetting of the 924, of at least Mora's use of a gun in connection with the murder. And I think it is, in large part because of this Pinkerton theory, which is purely discretionary. The jury would have been allowed to find Brooks guilty of murder if it believed that the murder was a foreseeable consequence of the conspiracy, but it wasn't required to. And I want to point to— But doesn't that amount to the same thing, though? Whether he's guilty of aiding and abetting because he handed a gun to Mora or because he drove the car to the site or because he gave moral support by being present or whether it's because he was a conspirator and therefore could be found guilty of aiding and abetting by virtue of Pinkerton. Isn't it all the same thing? He's aiding and abetting, on whatever theory, the use of a firearm to murder someone, and that's what the jury found in convicting him of the substantive murder charge. And I'm having a little trouble understanding how that can be separated from whether the jury would have found him guilty of the 924C violation, which is essentially the same thing. It may not be inextricably intertwined with the episode at Moe's earlier in the evening, but the 924C, there's not much daylight, if any, between the murder charge that he was convicted of and the 924C. So if the jury had never been told about any other crime, I'm just having trouble how any rational person could have found him guilty of the murder and not guilty of the 924C charge. I mean, I think the Pinkerton instruction would have allowed the jury to find him guilty on 924C without even finding that he aided and abetted the murder at all, that it was just a foreseeable consequence. But Pinkerton is a way of aiding and abetting. That's my thought. And so it would apply to the 924C count as well. I think Pinkerton is a separate theory of liability from aiding and abetting that is totally discretionary. Okay, I hear what you're saying. So, Mr. Rayfield, we've kept you a little bit past your time. You have reserved some time for rebuttal. Yes. I do have one very practical question, which is what difference does any of this make? That is to say, I know this isn't a legal doctrine. I'm just trying to figure out what is the game here in a sense. The district court created a sentence that was clearly designed to be essentially a time-served sentence. In fact, I think you refer to it as time-served even though that's not technically what it is in your brief. And he's already been released from prison. So I'm trying to see what happens next. So if we reverse the 924C count, then don't we clearly remand for a resentencing because, speaking of inexplicably intertwined, the sentences here were clearly designed to come out a certain way. And because there was a mandatory five years on the 924C, it's more than reasonable to think that the district judge set the 21-year sentence for the murder so that the total sentence would come out to 26 years. One would therefore predict that it's very likely that on that resentencing the judge now resentences to 26 years on the murder charge. And in any event, whether she does or she doesn't, whether she leaves it at 21 years, does anything happen at all? Does this even affect the supervised release term? How does anything matter here about this issue? Yeah. So, I mean, it's a good question. I mean, I think you're right that this would only affect the term of supervised release if at all. I don't know what the district court would do if it was sent back and he was resentenced. If it would necessarily impose the same sets of terms. Well, if he was resentenced to 21 years on the murder, in other words, just the district said, okay, the heck with it. The 924C is out, so we let the rest of the sentence stand 21 years. He's free as he was already free. And you're saying that the supervised release term would have already expired because it would be retroactively deemed to have started when he would have been released from prison. Except that actually he wouldn't have ever been released from prison until the 26 years because that's where he was at the time that the 2255 petition is filed. So I'm just, I mean, this is beyond anything that's before us. I'm just trying to understand what difference it all makes. Frankly, I've struggled with it, too. And I think he is currently serving a five-year term of supervised release on the 924C charge. Well, but that's concurrent with the five-year term on the other charge. But I guess you're saying you would have a shot at least of saying that the supervised release term is over if he's only sentenced to 21 years because the five years from the date of the 21st year, that would be over, too. I don't know whether that's right or wrong, but that's an argument. That's an argument that we would have. If this is reversed and it goes back to the district court and the district court doesn't say, yeah, it's 26 years anyway, you would then have that argument available. Yeah. Okay. Thank you, Your Honor. I appreciate the extra time. Thank you. We'll hear from the United States government. Good morning, Your Honors. May it please the court. My name is Gilbert Ryan. I'm an assistant United States attorney in the Eastern District of New York. As we've discussed this morning, this is an appeal of the denial of the defendant's habeas corpus petition, and the district court decision should be affirmed. The defendant challenges his conviction for count 35 of the superseding indictment. As we've discussed, that was a conviction under Section 924C. As we've been over, an issue here is what's known as Yates' error. And on review, the standard is plain error. And the defendant has the burden of showing that this error resulted in actual material prejudice to him. And so the question, as has been discussed, is whether, absent the trial court's error, a rational jury, if the jury had been properly instructed, would have arrived at the same verdict on the 924C count. The government submits that the trial court's error did not prejudice the defendant's substantial rights in any way because the defendant was convicted of the murder, the murder that was committed undisputedly with a firearm. And he was convicted under an aiding and abetting theory. And so under that same exact logic, he also would have to have been convicted of the 924C count. There was some discussion about Pinkerton and whether that charge was given. I submit it's not clear if it was given. Having reviewed the charge conference in this case, because we don't have the transcript of the charge itself, there was no discussion of Pinkerton at all, while there was extensive discussion of aiding and abetting, and aiding and abetting as it pertains to the 924C count that is at issue here. And the jury would have had several different avenues to convict the defendant of the 924C count. Either they could have found that because the defendant, and it's undisputed, had a firearm, he used and carried that firearm in furtherance of the murder that he was convicted of. Or, Judge Lynch, as you pointed out already, the jury, under the aiding and abetting theory, could have found that the defendant, aided and abetted Defendant Morris, carrying and use of the firearm in relation to the violent crime in this case, the murder. And so I think that the very important case to look at here would be United States v. Laurent, where this Court considered a Yates error under similar circumstances, and the Court said that structural errors such as Yates do not affect the defendant's substantial rights under a plain error analysis where it was overwhelmingly likely that any reasonable juror would have convicted on the basis of the government's primary theory. So to get really hyper-technical in ways that make my head spin a little bit, I had a dialogue with Mr. Rayfield a few moments ago about whether that standard for which you are advocating is a part of determining whether, is that harmless error analysis because it's distinct from the Yates test, which I was characterizing, perhaps erroneously, as the test for whether there was error. Do I get it right that you are saying that the test for which you are advocating emanates neither from whether there was error under Yates nor from, shall we say, ordinary harmless error analysis, but from the plain error standard? Yes, Judge. And that has the further benefit for you of putting the burden on them to establish the prejudice rather than your having to establish that it was not prejudicial beyond a reasonable doubt under ordinary harmless error review as would happen on direct appeal from an objective to error. That's correct, Judge. And so it is plain error, and clearly there's no dispute that there was error here. The error is clear and obvious. There are three predicates that cannot form the basis for a 924C conviction. We're talking about prejudice. We're talking about prejudice, though. And so the question then becomes what standard to look at. And there has to be, there cannot be reasonable doubt that there was, that any prejudice would have resulted in a different finding by the jury. Given the facts of this case, as we talked about a moment ago during the other colloquy, the jury would have to have found the essential elements to satisfy the 924C count when it convicted the defendant of the murder that it convicted him of. There's no other way of understanding that jury verdict. There's no other way. There's no other way. The jury, the defendant was convicted of aiding and abetting a murder, which was, we all agree, committed through the use of a firearm. So there's no way that the jury could have then turned to the next count, this 924C count, and found that the defendant did not aid and abet that crime of violence, the murder, any way other than either through using or carrying a firearm himself, because he had one, or aiding and abetting his co-defendant's use and carrying of that firearm. There was some discussion of Pinkerton, and I want to just get to that. Pinkerton and aiding and abetting, they're both ways of finding that the defendant was standing in the shoes of his co-defendant. The fact that an aiding and abetting charge or Pinkerton charge may have been given and may have allowed the jury to then ultimately convict the defendant does not somehow transform what happened here into a conspiracy or something like that which would not otherwise be a crime of violence under Supreme Court's case law. And so for those reasons, the decision below should be affirmed. I do want to just talk briefly about this idea of the counts having to be intertwined, as counsel mentioned. Just in case, yes, that would be helpful. Yes, yes, Judge. Obviously, were there two separate incidents that happened here, one at Moe's, one at the intersection of Linwood and Arlington? Yes. I don't think that can be disputed. However, these incidents were part of the same campaign of violence that was planned by the defendant and his co-defendants that day. Can you outline for me, then, the limits? I'm very focused on the standard of review, but if we get to this issue, can you outline the limits of this inextricably linked doctrine? From the government's perspective, what are the limits? Because you're saying anything goes. The gang engages in turf wars, turf battles, and all of those potentially, with, I take it, some temporal limit, could be regarded as not necessarily inextricably linked. I think that there definitely are limits. What separates this case from a case that you're mentioning in the hypothetical where maybe there's incidents that span months or even years is the fact that these incidents happened during a discrete time period. They happened on the same date. They were orchestrated right after the same planning session where the defendants met, armed themselves with the grenade that was used at Moe's to commit the arson, and the .45 caliber pistol that the defendant armed himself with, which he had both at the time of the arson and at the time of the murder at Linwood and Arlington, which happened as part of the same string of events. But, Mr. Ryan, if we focus on a verbal formula like inextricably intertwined, we have to make use of the best words we have, and we've chosen those words. But if we look at what the reason that test exists, the question is could a jury hypothetically have based the 924C conviction on one of those counts without reaching, which are invalid, without reaching the other one? Now, one might think, well, duh, this is the count that comes right after the murder count. If the jury is going through logically the indictment, they would naturally do that. But they could also naturally go through the evening in question. They were told it could be any of the four. They start with the first one. Isn't it clear that they could have based the verdict on that incident and then just not reach the rest? I take your other point that if those things hadn't been on the table, it's hard to understand how the jury could have avoided a finding of guilt on the murder, predicating the 924C on the murder count. But if we're asking what did they do and is there any chance that they did the wrong thing, it's clearly a chance. This is not a case like the difference between the conspiracy to murder and the murder, where you can't even get your head around what the difference is. There's an obvious difference between the two. So why isn't that the answer to why they're not inextricably intertwined? Rather than having to worry about, well, okay, suppose it was planned all as a series of attacks on different rival gangs, but one took place on Thursday and the next one on Saturday. Or what if they both took place on the same date, but one was a spontaneous decision to go and commit the next thing? And how does inextricably intertwined relate to that? If we're asking the questions I would like to ask, we don't get into those conundrums because it's just a question of is it hypothetically possible that the jury would have based, based it on one thing without, by the very fact of doing it, by the very fact that they found him guilty of 924C based on the grenade incident, that that inevitably means that they also, by just the very act of doing that, found him guilty of 924C based on the later murder. I see that my time is expiring, but if I could answer your question. I would say that it's difficult to get into the mind of the jury and know what they did. Could they have stopped at that? We're not asking what did they do. We can't get in their minds. We can't even ask them. We're not even allowed to ask them. The question is what could they have done? What is logically necessary and what is not logically necessary? I think that the inextricably intertwined test that we're talking about, that is just one method of answering this overall question. It is not the necessary method. What we're trying to determine here is, as the court said in Warren, whether it was overwhelmingly likely that any reasonable juror would have convicted on the basis of the government's primary theory if the jury had been properly instructed. And so this is a case where maybe the inextricably intertwined test that was articulated in Vasquez, the Vasquez case, is maybe not most apt because the facts are just a little bit different. But you've got the other argument as well. Yes, Judge. Thank you. Before you sit down, what is the best case with respect to the plain error standard? The best precedent from our court. Yes, I think that that is discussed in the Warren case. The court goes through the analysis of starting at plain error in a Yates, when there's a Yates structural error, and then talks about whether the error was ultimately harmless. Did I write that one? I can't remember whether I wrote that one because Larratt and Capers were part of the same sitting, and I think that Judge Hall was on that panel. He died, and Judge LaValle and I sort of divided up the other two cases, and he wrote one and I wrote the other one. But I'm very familiar with Larratt and Capers. This was Judge LaValle. That was LaValle. There's a story that Justice Cardozo was asked about Paul's graft, to which he answered, What is that about again? Okay, thank you. We'll hear from Mr. Rayfield. Thank you, Your Honor. First of all, I disagree that plain error review applies. The issue was preserved in the district court at the habeas level, and I don't think the district court or the government has ever argued that plain error review applies. I think this is a straight-up Yates analysis. And just jumping to Judge Lynch's questions, it is clear that the jury very possibly could have found the 924C conviction based on the arson charge. I would submit that that's the most likely scenario, because that was the one. Say that again. I'm sorry? Say it again. Repeat that. The jury could possibly have based the 924C conviction on the arson charge. I would submit that that's the most likely scenario, because, again, that's the only crime that Brooks himself personally carried out, including firing shots at the bystanders after the arson was completed. But I also want to note that I think we're all struggling with these mind-bending questions. And I think that the reason that this Court has adopted the inextricably intertwined test in the Vasquez case, in the Capers case, in the Tyrell case, is to avoid sort of trying to get into the heads of the jurors. When the Court is faced with what everyone agrees is an error, it looks at the factual link between the predicates and whether they can be extricated from one another. And because there is daylight between the arson-related charges and the Linwood murder, the crimes are at least extricable. And finally, I just want to point the Court, with respect to the Pinkerton issue, I just want to point the Court to United States v. Rodriguez, which is an opinion by Judge Height in the SDNY. It's 2020 Westlaw 1878112, where the Court holds that Davis would, quote, clearly disqualify jury verdicts of substantive guilt based on the Pinkerton theory of liability. And the Court goes into the reasons why a Pinkerton theory would throw things into question, even when there's also an aiding and abetting theory. Thank you very much. Thank you. We'll reserve decision. Thank you both.